[No. 41-40282-3. Division Three. June 30, 1970.]

THE STATE OF WASHINGTON, *on the Relation of John Beck et al., Appellants,* v. G. E. CARTER, *as Mayor, et al., Respondents.*

*R. Ted Bottiger* (of *McGavick, Hemmen & Bottiger*), for appellants.

*D. Wayne Campbell,* for respondents.

EVANS, C. J.—Plaintiffs are firemen for the city of Pasco. They appeal from the dismissal of their application for a

writ of mandamus to compel the defendant city officers to issue salary warrants for claimed overtime.

Prior to January 1, 1967 ordinance No. 1184 of the city of Pasco provided as follows:

*Section 13.* HOURS OF WORK—FULL TIME REGULAR EMPLOYEES: Forty hours shall constitute the standard work week and eight the full time work day, except in the fire department the standard work week shall average 56 hours. The department head, subject to the approval of the City Manager, shall establish appropriate work shifts specifying starting and ending times, lunch period and scheduled day of rest.

*Section 14.* OVERTIME: Overtime work shall include only that work performed by regular employees at the direction of a department head or his authorized representative, which exceeds work schedules and *may be compensated* as follows:

a) Time and one-half *will be paid* to regular employees, except department heads or administrative employees for hours in excess of the scheduled work day.

b) Regular employees whose attendance is required by the City at drill or training sessions shall be paid at their regular hourly rate.

c) They *will be allowed* a minimum of 1 hour of reporting time if called out for work which exceeds work schedule.

(Italics ours.)

Based on these provisions, Pasco firemen worked a shift of 24 hours on and 48 hours off, averaging 56 hours per week. During the 24-hour period while in the station house firemen were required to perform certain station house tasks, but were allowed time to sleep if not called out for a fire. They received overtime pay when called while off duty or for working in excess of 56 hours per week.

In May of 1966 the firemen requested that in the 1967 city budget they be afforded compensation on a parity base with the city police department. The city council agreed to this request upon the condition that the present 56-hour workweek be reduced to a 40-hour workweek. Immediately, representatives of the fire department warned that

such a step would bring about the resignation of many of the firemen. Their objection was that such a schedule would create hazards resulting from inadequate manpower, and also would preclude the firemen from maintaining ancillary employment. In view of this objection, the city council agreed the new work schedule would not become effective until additional firemen were obtained, and announced it would continue to pay overtime compensation only in excess of 56 hours per week until a full complement of firemen had been established. On October 3, 1966 the final budget was adopted. It provided annual salaries for firemen which were comparable to those for policemen, and also provided for two additional firemen.

Thereafter on December 20, 1966 the city council amended section 13 of ordinance No. 1184, *supra*, effective January 1, 1967, eliminating the provision for a 56-hour workweek for firemen, thus making 40 hours the standard workweek and 8 hours the full-time workday for all city employees, including firemen. At the same time, the city council amended section 14 of ordinance No. 1184, *supra*, by eliminating subparagraph b). The remainder of section 14 was unchanged.

The city filled the two additional positions in the fire department in March of 1967 and initiated an 8-hour day and 40-hour week on April 17, 1967, after which time the firemen were paid overtime at the rate of time and one-half for hours worked in excess of 40 hours per week.

By this action plaintiffs seek to recover overtime for the period between January 1, 1967 and April 17, 1967 for hours worked in excess of either 8 hours per day or 40 hours per week. If the ordinance is interpreted to require time and one-half for work in excess of 8 hours per day, it is agreed the total sum involved is $18,423.43. If the ordinance is interpreted to require overtime for work in excess of 40 hours per week, it is agreed the total sum involved is $12,085.97.

The trial court held the plaintiffs had been fully compensated pursuant to their annual salary as fixed in the 1967

Pasco city budget, there is no ordinance fixing firemen's salaries independent of that budget, and that the phrase "may be compensated" as used in section 14 of the ordinance is to be construed as permissive, thereby conferring discretionary power on the city to determine whether or not to pay for overtime.

Plaintiffs direct the court's attention to the mandatory language "will be paid" in section 14, *supra*, and contend that by extending the 56-hour workweek beyond January 1, 1967, contrary to the provisions of section 13, *supra*, as amended, the city required the firemen to perform services for less compensation than fixed by law. *Malcolm v. Yakima County Consol. School Dist. 90,* 23 Wn.2d 80, 159 P.2d 394 (1945); *Watkins v. Seattle,* 2 Wn.2d 695, 99 P.2d 427 (1940). The city agrees the rule is well established in Washington that a salary ordinance governs the amount a municipal employee will receive and any agreement contrary thereto is void as against public policy, but disagrees that the ordinance in question is a salary ordinance. Defendant contends the legislature by RCW 41.08.110 has granted the city complete discretion to determine wages and hours for firemen, and the city has retained that discretionary power to either pay or not pay for overtime by use of the permissive language "may be compensated" in section 14 of ordinance No. 1184, *supra.*

A cardinal rule of statutory construction is that the words to be construed must be given their usual and ordinary meaning. *State v. Houck,* 32 Wn.2d 681, 685, 203 P.2d 693 (1949); *Sandona v. Cle Elum,* 37 Wn.2d 831, 837, 226 P.2d 889 (1951). According to Webster's Third New International Dictionary (1969), "may", in its ordinary and usual meaning, conveys the idea of choice, option or discretion. The general rule of statutory construction has long been that the word "may" when used in a statute or ordinance is permissive and operates to confer discretion. *Spokane County ex rel. Sullivan v. Glover,* 2 Wn.2d 162, 97 P.2d 628 (1940); *Paterson v. Paterson,* 70 Wn.2d 204, 422 P.2d 474 (1967). Also, when both discretionary and manda-

tory language are used in a statute or ordinance, there is an inference that the legislature realized the difference in their meaning.

> Where both mandatory and directory verbs are used in the same statute, or in the same section, paragraph, or sentence of a statute, it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs used should carry with them their ordinary meanings. Especially is this true where "shall" and "may" are used in close juxtaposition in a statutory provision, under circumstances that would indicate that a different treatment is intended for the predicates following them.

3 Sutherland, Statutory Construction, § 5821, at 116 (3d ed. 1943). Also, as expressed in *Spokane County ex rel. Sullivan v. Glover, supra*:

> There is no universal rule or absolute test by which it can be positively determined whether a provision in a statute is mandatory or directory. In the determination of that question . . ., the prime object is to ascertain the legislative intent as disclosed by all the terms and provisions of the act in relation to the subject of legislation, and by a consideration of the nature of the act, the general object to be accomplished, and the consequences that would result from construing the particular statute in one way or another. 59 C. J. 1072, § 631; 25 R. C. L. 767, § 14.

In applying this rule the trial court observed there was nothing in the record of events leading up to the amendment of the ordinance in January of 1967 to indicate or suggest that the parties intended to apply time and one-half for 16 hours of each 24-hour shift. We agree that such an interesting and unusual consequence obviously was not contemplated by the parties as being within the general object of establishing parity pay with police officers.

In determining legislative intent, the trial court also gave consideration to the contemporaneous construction given to this ordinance since its original enactment by the city coun-

cil and the city manager. Finding of fact No. 8 provides, in part:

Since the passage of Ordinance No. 1184 and at all times thereafter the City Manager has determined the policy for payment of overtime throughout the various departments, including the fire department of the City of Pasco. The City Council has at no time made any changes in his administration of the overtime ordinances.

Finding of fact No. 9, which was unchallenged, states that in addition to city firemen, employees of the sanitary department and planning commission do not receive overtime compensation for hours worked in excess of 40 hours per week. The work schedule for sanitary department employees averages 40 hours per week over a 6-week period, but sanitary employees are required to work 7 straight 8-hour days without overtime compensation. Members of the planning commission are required regularly to attend evening meetings of the city council, city planning commission and other city commissions following their regular workday. These employees occasionally receive some compensating time off for their evening hours if approved by the city manager. As stated in *Morin v. Johnson*, 49 Wn.2d 275, 279, 300 P.2d 569 (1956):

It is a familiar rule of statutory construction that, in any doubtful case, the court should give great weight to the contemporaneous construction of an ordinance by the officials charged with its enforcement. This is especially true where the administrative construction has been accompanied over a period of years by the silent acquiescence of the legislative body. *State ex rel. Ball v. Rathbun*, 144 Wash. 56, 256 Pac. 330; *State ex rel. Pirak v. Schoettler*, 45 Wn. (2d) 367, 274 P. (2d) 852; *Matter of 440 East 102nd Street Corp. v. Murdock*, 285 N. Y. 298, 34 N.E. (2d) 329; *Kubby v. Hammond*, 68 Ariz. 17, 198 P. (2d) 134.

But as the trial court observed, we are not concerned with an attempt by the city to pay less than the standard salary fixed by ordinance, but rather with a city's right to define a workweek and reserve the authority to pay or not to pay overtime.

■ Municipal employees are not entitled to compensation for overtime work in absence of a valid contract or law authorizing it. 4 McQuillan, Municipal Corporations, § 12.194(a) (3d ed. 1968); *Martin v. Henderson,* 40 Cal. 2d 583, 255 P.2d 416 (1953). As stated in *State ex rel. Heffernan v. Hoquiam,* 186 Wash. 50, 56 P.2d 1012 (1936):

> One claiming the salary of a municipal officer must point to a provision of the law which, with certainty and beyond doubt, authorizes it.

A fireman is a public officer. *Benefiel v. Eagle Brass Foundry,* 154 Wash. 330, 282 P. 213 (1929); *Lakoduk v. Cruger,* 48 Wn.2d 642, 296 P.2d 690 (1956).

We agree with the trial court (1) the plaintiffs have been fully compensated pursuant to their annual salary as fixed in the 1967 Pasco city budget and there is no law fixing firemen's salaries independent of the annual budget, (2) section 13 of ordinance No. 1184 is not an ordinance fixing compensation but determines the minimum number of hours a fireman must work to receive his annual salary, as exclusively determined by the annual budget, and (3) in section 14 of ordinance No. 1184 the term "may" is to be construed as permissive, thereby conferring discretionary power on the city to determine whether or not to pay overtime to firemen.

Plaintiffs assign error to findings of fact No. 3 and 4. These findings in large part were based on the testimony of Horace Monasco, the Pasco City Manager, who testified concerning all meetings leading up to passage of the above ordinance. Plaintiffs do not contend these findings are incorrect but assert they place too much emphasis on isolated meetings between the firemen and the city. We have reviewed the record and find the challenged findings are supported by substantial evidence. The weight attached by the trial court to what transpired at particular meetings is within the evidence and will not be disturbed.

Plaintiffs challenge finding of fact No. 7, which states:

> All employee salaries in the City of Pasco budget including firemen are determined on an annual basis and at

no time is an hourly rate paid. An hourly rate is only used in those instances for computing overtime and salary deductions where an employee works less than his or her assigned work schedule.

This finding is amply supported by the testimony of Horace Monasco, who testified that the budget for the city is based on annual salaries, which in turn are divided by 26 to reflect biweekly pay periods.

Assignment of error No. 4 challenges the trial court's finding that section 13 of the ordinance was changed to accommodate the computer used in figuring the payroll for its firemen on the basis of a 56-hour workweek, a new computer panel costing $500 would have to be purchased and discarded after the 40-hour week was initiated. Testimony regarding this came from the city manager, whom the trial court elected to believe. The weight to be assigned to the testimony of the various witnesses is for the trier of facts and this finding supported by substantial evidence will not be disturbed.

█ Lastly, plaintiffs challenge conclusion of law No. 5, which states that:

> In denying overtime compensation to the firemen, the City of Pasco did not abuse its discretionary power accorded it by Section 14 of Ordinance No. 1285.

It is well established that courts will not review, except for clear abuse, the discretion that is vested in public officers. *Lillions v. Gibbs*, 47 Wn.2d 629, 289 P.2d 203 (1955). There is no showing made by plaintiffs that the city of Pasco abused its discretion in denying overtime to the firemen.

Judgment is affirmed.

GREEN and MUNSON, JJ., concur.