# BEULAH ELIZABETH RAMSEY ET AL. v. PRINCE GEORGE'S COUNTY, MARYLAND

[No. 669, September Term, 1972.]

*Decided July 11, 1973.*

The cause was argued before ORTH, C. J., and POWERS and SCANLAN, JJ.

*Alan D. Massengill*, with whom were *Massengill & Jersin* on the brief, for appellants.

*Ellis J. Koch* for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellants are Beulah Elizabeth Ramsey, the mother of the deceased, Roger Hugh Ramsey, and his brother and personal representative, Garland G. Ramsey. They appeal from a judgment of the Circuit Court for Prince George's County granting a motion under Rule 323 b raising the preliminary objection that the appellee, Prince George's County, by virtue of the doctrine of governmental immunity, was immune from suit brought for the wrongful death of Roger Hugh Ramsey. The deceased was shot and killed by Michael S. Betts, a police officer for Prince George's County. After appellee's motion prevailed, appellants proceeded with their suit against Betts. That action was settled and the case against him dismissed with prejudice on October 11, 1972. An order appealing the lower court's grant of the motion raising the preliminary objection was then filed on November 3, 1972.

Three questions are properly before us on this appeal.[1] These are:

> (1)  Does the doctrine of governmental immunity bar appellants' suit against Prince George's County?
>
> (2)  Was Officer Betts acting in a discretionary or in a ministerial capacity?

---

\* Note: *Certiorari* denied, Court of Appeals of Maryland, September 18, 1973.

1. Appellants also attempt to argue on appeal that governmental immunity aside, the principle of respondeat superior applies and Prince George's County, therefore, should be held responsible for the acts of the police officer in the shooting of the deceased. This issue, however, was neither raised nor argued in the court below; it is barred from our consideration now. Rule 1085.

(3) What was the effective date of Section 1013 of the Charter of Prince George's County under which actions may now be brought against the County for the torts of "its officers, agents and employees?"

The essential facts in this case show that the deceased was shot and killed by Officer Betts on November 29, 1970 at approximately four o'clock in the morning while the former was sitting in his automobile on the parking lot of a tavern in Prince George's County. It appears that he was asleep, under the influence of alcohol, in his car waiting for a service station to open. He had a flat tire and was without a spare. The police officer approached the car, opened the door and apparently startled the deceased, who partially turned around in his seat. Officer Betts then fired a shot which resulted in the death of Mr. Ramsey.

I

## GOVERNMENTAL IMMUNITY REMAINS THE LAW OF MARYLAND

The appellants strongly urge that we should discard the doctrine of sovereign immunity, or more precisely governmental immunity, in this case.[2] Similar spirited attacks on the doctrine have been rejected by the Court of Appeals. We cite only representative cases: *Jekofsky v. State Roads Commission*, 264 Md. 471, 473, 287 A. 2d 40 (1972); *Robinson v. Board of County Commissioners for Prince George's County*, 262 Md. 342, 278 A. 2d 71 (1971). *Godwin v. County Commissioners for Saint Mary's County*, 256 Md. 326, 260 A. 2d 295 (1970); *Duncan v. Koustenis*, 260 Md. 98, 104, 271 A. 2d 547 (1970). The resoluteness of the Court of Appeals' refusal to join the courts of other states in

---

2. Although often used interchangeably, strictly speaking "sovereign" immunity and "governmental" immunity are not synonymous. "Sovereign" immunity is a specific term limited in its application to nations and states and to the departments, commissions, boards, institutions and instrumentalities of the state. Myers v. Genesee County Auditor, 375 Mich. 1, 133 N.W.2d 190, 191 (1965). The counties of Maryland are not sovereign entities. Maryland Committee for Fair Representation v. Tawes, 377 U. S. 656, 675 (1964); Reynolds v. Sims, 377 U. S. 533, 575 (1964).

repudiating the doctrine of governmental immunity may be gathered from its recent pronouncement in *Quecedo v. Montgomery County, Maryland, supra,* where it said:

> "This Court has indicated many times that it will not depart from its prior decisions in regard to the doctrine of sovereign immunity and that a change in that doctrine must come from the legislative branch of the State government." 264 Md. at 595.

We acknowledge the careful task of research which the appellants have performed in laying before us the decisions of sister states in which more activistic courts of last resort have judicially jettisoned the doctrine of sovereign or governmental immunity as anomalous, archaic, vestigial, outmoded and not in accord with modern conditions. We also do not dispute that the legal commentators make out a strong case for the abolition of the doctrine. *Robinson, supra* at 345, n.5. Unfortunately for the appellants, "we do not write on a clean slate." *United States v. South Buffalo Ry.,* 333 U. S. 771, 774 (1948). The Court is not free to ignore the rule of *stare decisis.* Moreover, even if it were, we would be reluctant to appropriate what is primarily a legislative function, *i.e.,* the determination of public policy. Merely because the genesis of the doctrine of sovereign immunity may be found in early decisions of the courts of common law, English [3] and American,[4] constitutes no basis for arguing that the doctrine should be abolished by judicial decision, without regard to the desires of the representatives of the people concerning its elimination, modification or retention. The sounder judicial view on this question, in our opinion, was expressed by the Court of Appeals in *Jekofsky v. State Roads Commission, supra* at 474, when it said:

> "Quite apart from our prior decisions, it is desirable and in the public interest that any change in the doctrine of sovereign immunity should come

---

3. Feoffees of Heriot's Hospital, 12 Clark & Fin. 507, 8 Eng. Reprint 1508 (1846).

4. Perry v. House of Refuge, 63 Md. 20 (1885); McDonald v. Massachusetts General Hospital, 120 Mass. 432 (1876).

> from the legislative branch of the State
> Government rather than from the judicial branch
> inasmuch as there are fiscal considerations,
> administrative difficulties and other problems in
> balancing the rights of the State and its agencies
> with new possible rights of the individual citizens,
> which can far better be considered and resolved by
> the legislative branch than by the judiciary of the
> State."

In asking that the Court undertake what is properly a function of the General Assembly, appellants lament that "legislators have been relatively indifferent to reform in tort law." That is a debatable proposition. We note, for example, that in dealing with the doctrine of charitable immunity, the Maryland General Assembly has modified it in the case of hospitals and related institutions. Article 43, Section 556A, Maryland Ann. Code (1971 Repl. Vol.); *Howard v. Bishop Byrne Council Home, Inc.*, 249 Md. 233, 238 A. 2d 863 (1968). Nor have legislatures proved reticent in enacting wrongful death statutes to close the gap created by early decisions of the common law courts holding that no such right to recover existed. Prosser, *Torts* 901 (4th ed. 1971). Today, every American state has a statutory remedy for wrongful death. *Id.* at 902. In any event, courts do not exist to provide relief from all the inequities which may arise when ancient rules are applied to current conditions. This is especially so when, as here, a change in the rule necessarily involves considerations which transcend the pure legal issue presented and require the determination of policy matters which are more the forte of legislators than of judges. So far as the latter are concerned, the prudent advice which Mr. Justice Holmes once gave retains validity. "It is unwise to go much beyond what we find in the books." *Ker & Co. v. Couden*, 223 U. S. 268, 276 (1912).

If the doctrine of governmental immunity is to be discarded or modified, it will have to be the General Assembly of Maryland which does it. The Court of Appeals has made it clear, and we agree, that neither they nor we are

the proper instrumentality to effect such a profound change in the common law of Maryland.

## II

## THE POLICE OFFICER WAS ACTING IN A DISCRETIONARY NOT A MINISTERIAL CAPACITY

Appellants also argue that the exercise of the police function by Officer Betts in this case was "ministerial" and not "discretionary." *Thomas v. Johnson*, 295 F. Supp. 1025 (D.C. 1968); *Baker v. Washington*, 448 F. 2d 1200 (D.C. Cir. 1971). In their view, Prince George's County should not enjoy immunity in this case, since, they contend, in Maryland governmental immunity is extended only to the acts of public officials who are "acting in a discretionary as opposed to a ministerial capacity." *Duncan v. Koustenis, supra* at 104. Again, a dispositive answer is found in decisions of the Court of Appeals. In *Robinson v. Board of County Commissioners for Prince George's County, et al., supra*, the Court said:

"It is clear that policemen are 'public officials,' *State, to Use of Wilkerson v. Baltimore County*, 218 Md. 271, 146 A. 2d 28 (1958); *Harris v. Mayor and City Council of Baltimore*, 151 Md. 11, 133 A. 888 (1926), and that when they are within the scope of their law enforcement function they are clearly acting in a discretionary capacity." *Id.* at 347.[5]

However tragic and regrettable his action may have been, Officer Betts was performing a law enforcement function when the deceased was shot on November 29, 1970. Since he was acting in a discretionary capacity immunity attached and the lower court therefore correctly ruled that Prince George's County was entitled to invoke the privilege.[6]

---

[5] *See also* Eliason v. Funk, 233 Md. 351, 196 A. 2d 887.

[6] Some jurisdictions have held that "the action of a police officer in making an assault upon a citizen is not a discretionary act, but is merely ministerial." Thomas v. Johnson, *supra* at 1032; Robinson v. Smith, 211 Cal. App. 2d 473, 27 Cal. Reptr. 536, 541 (1962). *Cf.* Sherbutte v. Marine City, 374

## III

### SECTION 1013 OF THE CHARTER OF PRINCE GEORGE'S COUNTY BECAME EFFECTIVE FEBRUARY 8, 1971 AND DOES NOT APPLY RETROSPECTIVELY

On Election Day, November 3, 1970, the voters of Prince George's County approved the adoption of a new Charter. Section 1013 of the new Charter provides that:

> "Governmental Liability. The County may be sued in actions sounding in tort in the same manner and to the same extent that any private person may be sued. The County shall carry liability insurance with adequate limits to compensate for injury to persons or damages to property resulting from negligence and other wrongdoings of its officers, agents and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program."

The deceased was killed on November 29, 1970, twenty-six days after the new Charter had been approved by the electorate. It is appellants' final contention that the Charter was "adopted" prior to the death of Mr. Ramsey, and, therefore, Prince George's County cannot claim governmental immunity because of its waiver under Section 1013. Application of established principles of statutory construction force the conclusion that the new charter was not intended to become legally operative prior to the date it was to take effect and thus requires our rejection of appellants' contention to the contrary.

Generally, the interpretation or construction of county charters in Maryland have been treated in the same manner as statutes. *County Com'rs v. Supervisors of Elections*, 192

---

Mich. 48, 130 N.W.2d 920, 923 (1964). *See also* Jaffe — *Suits Against Governments and Officers: Damage Actions*, 77 Harv. L. Rev. 209, 229 (1963). As noted, that is not the law of Maryland. Robinson, *supra* at 347.

Md. 196, 207, 63 A. 2d 735 (1949); *see also Connor v. Board of Supervisors*, 212 Md. 379, 383, 129 A. 2d 396 (1957). Accordingly, for the purpose of determining the effective date of the Charter which Prince George's County adopted on November 3, 1970, we will apply the rules of construction that are usually invoked in a determination as to when a statute is to take effect.

It is a cardinal canon of statutory construction that "retrospective operation of a statute is not favored." *Rigger v. Baltimore County, Maryland*, et al., 269 Md. 306, 305 A. 2d 128 (1973); *State Farm v. Hearn, Adm'x*, 242 Md. 575, 219 A. 2d 820 (1966); *Bell v. State*, 236 Md. 356, 204 A. 2d 54 (1964); *Gutman v. Safe Deposit & Trust Co.*, 198 Md. 39, 81 A. 2d 207 (1951); 2 Sutherland, *Statutory Construction*, § 2201 (3rd ed. 1943). There is a general presumption that statutes are intended to operate prospectively and the presumption may be rebutted only by a clear expression in the statute of a contrary legislative intention. *Zebron v. American Oil Co.*, 10 Md. App. 308, 310, 270 A. 2d 339 (1970); and *see Unsatisfied Claim and Judgment Fund Board v. Bowman*, 249 Md. 705, 708, 241 A. 2d 714 (1968).

Ordinarily, a statute affecting substantive rights "will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect:

> '* * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. * * * (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions.' " [7]

---

7. Janda v. General Motors, 237 Md. 161, 169, 205 A. 2d 228 (1964).

When no time is expressly fixed by constitutional provision, or by other applicable provisions of law, a statute takes effect on the date it becomes law. *Robey v. Broersma,* 181 Md. 325, 342, 29 A. 2d 827 (1943). The new Prince George's County Charter, however, contains a provision setting forth the effective date of the act. Section 1101 thereof, states:

> "Effective date of Charter. This Charter shall become effective on the thirtieth day following its adoption, except as otherwise specifically provided in the Transitional Provisions (Article XII) of this Charter." [8]

Section 1207, which is one of the Transitional Provisions of the Charter, provides as follows:

> "Time Certain Article become Operative. Articles I through XI of this Charter shall become operative at the time the first County Executive and the majority of the members of the first Council take office."

Section 1205 of the Transitional Provisions states that:

> "Terms of Office of the First Council and of the First County Executive. The terms of office of the members of the first Council and of the first County Executive shall commence at noon on Monday, February 8, 1971, and shall expire at noon on the first Monday in December, 1974."

It should be indisputably clear that the effective date of Section 1101 (waiver of governmental immunity) was February 8, 1971, the day the first Council and first County Executive began their terms of office. The Court of Appeals, although by way of dicta only, also appears to have concluded that February 8, 1971 was "the effective date of

---

8. Article XI-A, Section 1A of the Maryland Constitution provides the Charter here in question "shall become effective as the charter of the county on the thirtieth day after the election *or such later date as shall be specified in the charter.*" (Emphasis added.) Section 1101 of the Prince George's County Charter thus finds specific authority in the Maryland Constitution.

the Charter" for Prince George's County. *Heller v. Prince George's County*, 264 Md. 410, 411, n.1, 286 A. 2d 772 (1972); and *see* the concurring opinion of Judge Barnes in *Prince George's County v. Prestwick, Inc.*, 263 Md. 217, 234, 282 A. 2d 491 (1971).

Our conclusion that the effective date of the new Prince George's County Charter was February 8, 1971 is supported by a recent decision of the United States District Court for the District of Maryland. *Woodward v. Flynn and Prince George's County*, Civil No. 71-1430-K (D. Md.), decided March 20, 1973. That case involved a claim by a citizen that he was beaten and harassed by a Prince George's County police officer on January 1, 1971. That date fell between November 3, 1970, the day the new charter was approved by the voters, and the effective date of the document. Thus, *Woodward* presented the same issue that we must resolve here. The District Court, after referring, as we have, to the relevant charter provisions, held that the effective date for any waiver of governmental immunity on the part of Prince George's County was February 8, 1971, and, therefore, Woodward's action against the County could not be maintained. Similarly, appellants' action against Prince George's County was properly denied in the court below, since the right of citizens to sue the County in tort was not created until February 8, 1971, a little over two months after the deceased was shot by Officer Betts.

*Judgment affirmed; appellants*
*to pay costs.*