GEORGE P. KARANGELEN ET UX. *v.* SAMUEL SNYDER

[No. 23, September Term, 1978.]

*Decided October 13, 1978.*

The cause was argued before THOMPSON, DAVIDSON and WILNER, JJ.

*Eugene Alexander, III,* with whom was *Sidney Blum* on the brief, for appellants.

*T. Rogers Harrison,* with whom was *W. Lee Harrison* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

We are here concerned with the extent to which a policeman is entitled to the defense of governmental immunity. The appeal is from an order granting a motion for summary judgment in favor of the appellee, a Baltimore County Policeman, by Judge Albert P. Close, sitting in the Circuit Court for Harford County. The factual basis for appellee's motion was supported by certain excerpts from his deposition and the official police report which he submitted relating to the accident in question. The appellants opposed the motion but submitted no affidavits or other evidence which would raise a dispute as to any material facts. The facts, as related by appellee, showed that he was on duty at the date and time in question, and that his assignment was to check parking meters and issue citations in a certain section of Baltimore County. His means of transportation was a police vehicle described as a Cushman Truckster which is a small motorized vehicle not much larger than a motor scooter but with a semi-enclosed area where the operator is seated. Being unfamiliar with the handling of the scooter, and desiring to avoid making a U-turn, the appellee pulled into a service station lot with the intention of crossing to an adjacent street onto which he could turn safely and proceed in the desired direction. The appellant [1] and appellee were personally acquainted with each other and while appellee was on the service station lot he observed the appellant motioning for him to come over. From appellee's police report it appears that the appellant's purpose was to get a look at the vehicle which appellee was operating, although it is not clear what purpose appellee had in responding. While driving toward appellant, appellee "misjudged the distance due to [his] inability ... to see the full length of the Cushman through

---

1. The appellant George Karangelen was joined as a plaintiff by his wife who alleged loss of consortium. As the contention raised on appeal is based on facts involving only Mr. Karangelen, references to "appellant," in the singular, refer to him.

the curtain provided for a door." A collision ensued in which the appellant suffered the injuries for which he now seeks compensation.

The only issue is whether the appellee is entitled to the protection of governmental immunity.

The Court of Appeals has held that a police officer is a "public official" when acting within the scope of his law enforcement function. *Robinson v. Board of County Commissioners,* 262 Md. 342, 278 A. 2d 71 (1971); *Wilkerson v. Baltimore County,* 218 Md. 271, 146 A. 2d 28 (1958); *Harris v. Mayor and City Council of Baltimore,* 151 Md. 11, 133 A. 888 (1926). Accordingly, he is protected by a qualified immunity against civil liability for non-malicious acts performed within the scope of his authority. *Carder v. Steiner,* 225 Md. 271, 170 A. 2d 220 (1961); *Clark v. Ferling,* 220 Md. 109, 151 A. 2d 137 (1959); *Cocking v. Wade,* 87 Md. 529, 40 A. 104 (1898). In the instant case there is no allegation of malice and so the precise issue is whether by responding to appellant's gesture appellee so stepped outside the scope of his law enforcement function that he lost the protection of governmental immunity and became liable for the consequences of his alleged negligence.

We have been unable to locate any cases addressing the question of whether a deviation from the strict course of his duties will take a public official outside the protection of governmental immunity. It may be that the lack of such cases is due to the prevailing rule that police officers and similar officials will be held liable, under most circumstances, for the consequences of their negligence when performing routine functions, such as operating motor vehicles. W. Prosser, *Law of Torts* § 132 (4th ed. 1971); Annot., 60 A.L.R.2d 873 (1958). Maryland, however, has made no such distinction, conditioning a public official's immunity on the absence of malice and action within the scope of his authority. *Carr v. Watkins,* 227 Md. 578, 177 A. 2d 841 (1962). In *Duncan v. Koustenis,* 260 Md. 98, 271 A. 2d 547 (1970), the Court acknowledged that in some states the rule is not to extend immunity to government employees when acting negligently on the theory that negligent acts fall outside their

governmental authority, but, as we have said, Maryland does not follow this rule under the cases heretofore cited.

In the present case the contention is not that the appellee exceeded the scope of his authority in the jurisdictional sense; nor is it argued that mere negligence took his acts outside the realm of his governmental authority. Rather, the argument is that the appellee was not performing his assigned police duties at the time of the accident. Appellant contends that by deviating from his planned course appellee embarked upon a purely personal mission of his own and temporarily suspended the performance of his role as a policeman. In the absence of any case law on the precise question it may be helpful to turn to the authorities dealing with the somewhat analogous problem of when an employee is acting within the scope of his employment for purposes of applying the doctrine of *respondeat superior*. That doctrine holds that an employer may be held liable for damages negligently caused by his employee while the employee was acting within the scope of his employment. *East Coast Lines v. Mayor & City Council of Baltimore,* 190 Md. 256, 58 A. 2d 290 (1948); *Rusnack v. Giant Food, Inc.,* 26 Md. App. 250, 337 A. 2d 445 (1975). Ordinarily, the question of whether a servant has acted within the scope of his employment is for the finder of fact, *Baltimore Consolidated Ry. Co. v. Pierce,* 89 Md. 495, 43 A. 940, 45 L.R.A. 527 (1899); *Rusnack v. Giant Food, Inc., supra,* but "[w]here there is no conflict in the evidence relating to the question and but one inference can be drawn therefrom, the question is one of law for the court. *Globe Indemnity Co. v. Victill Corp.,* 208 Md. 573, 585." *Rusnack, supra* at 265, 337 A. 2d at 454.

In determining whether a servant's acts are within the scope of employment the courts also have attempted to draw a line between "detours" and "frolics." The former being treated as within the scope of employment and the latter being considered a complete abandonment of it.[2] *See* Prosser,

---

2. A note of caution is in order with respect to the use of these terms. Some cases use the word "detour" when referring to conduct held to be outside the scope of employment. The term "frolic," however, invariably refers to such conduct.

*supra* at 461-64; 2 Harper and James, *The Law of Torts* § 26.8. A variety of factors have been cited as bearing on the determination of whether a particular deviation amounts to a detour or a frolic.

> "These factors include the time and place of the deviation, its extent with relation to the prescribed route, whether its motivation is in part to serve the master, and whether it is the usual sort of deviation for servants on such a job." 2 Harper and James, *supra* at 1383.

In *Carroll v. Hillendale Golf Club,* 156 Md. 542, 545, 144 A. 693 (1929), the Court of Appeals adopted the following statement from *Ritchie v. Waller,* 63 Conn. 155, 28 A. 29, 27 L.R.A. 161 (1893):

> "When the servant's deviation from the strict course of his employment or duty is slight and not unusual, the court may determine as a matter of law that he is still executing the master's business, and if the deviation is very marked and unusual it may determine the contrary."

In *Ritchie,* a servant on his return from picking up a load of manure for his master took a slight detour to a shoemaker's shop for his own purposes. While at the shoemaker's his master's team ran away causing damage to the plaintiff. The Court held that at a minimum this case presented a question of fact on the scope of employment issue; but it went on to say that, even as a matter of law, the slight deviation from the strict course of his master's business was insufficient to take the servant's action outside the scope of employment. 28 A. at 32.

In *Marquardt v. United States,* 115 F. Supp. 160 (S.D. Cal. 1953) a federal employee was traveling in his own automobile to an official work assignment while at the same time traveling to a personal destination en route. The facts were stipulated and the United States District judge presiding over

the case held that the employee was acting within the scope of his employment, applying the following rule:

> " '... where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master.' " 115 F. Supp. at 162 quoting from *Ryan v. Farrell,* 208 Cal. 200, 280 P. 945, 946 (1929).

The facts in the present case are susceptible of the inference that appellee deviated from the direct course of his duties in order to answer the call of appellant.[3] This deviation was so slight that under the principles in the cases mentioned above it may be held as a matter of law to be insufficient to constitute a "frolic" which would take the appellee outside the scope of his employment as a police officer. While we recognize the differences between determining scope of authority for the purpose of fixing liability on an employer and for the purpose of determining whether a policeman is entitled to governmental immunity, we think the problems are sufficiently close that the analogy is proper.

> *Judgment affirmed.*
> *Appellants to pay the costs.*

---

3. The other inference that the officer was merely responding to a citizen's request that he stop for some unknown communication, is more favorable to the appellee.