JOHN K. MACY *v.* FRANK HEVERIN ET AL.

[No. 306, September Term, 1979.]

*Decided December 7, 1979.*

The cause was argued before GILBERT, C. J., and MORTON and LOWE, JJ.

*Willard C. Parker, II,* with whom were *Miller, Wheeler, Thompson & Thompson* on the brief, for appellant.

*David A. Vorhis,* with whom were *W. Newton Jackson, III* and *Webb, Burnett & Duvall* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court. LOWE, J., filed a concurring opinion at page 365 *infra.*

This is yet another appeal invoking the antediluvian dogma of sovereign immunity.[1] Our founding fathers apparently had a higher regard for property than they did for human life. This conclusion is permitted by observing that the Constitution of the United States proscribes the State's taking of property from its citizens without due process of law. The Constitution, however, is silent as to the State's taking of life as a result of negligence and with or without due process of law. Property rights are constitutionally safeguarded, but the negligent taking of human life is disregarded. To be certain that it is not responsible for loss of human life, even as a direct result of the State's negligence or wilfulness, the State has inoculated itself with sovereign immunity. In the case *sub judice,* the Circuit Court for Caroline County (Rasin, J.) ruled that a volunteer member of a fire company who drove an ambulance solely for the purpose of "air-drying" it after it had just been washed, and

---

1. The Court of Appeals and this Court have, on several occasions, indicated that if the doctrine of sovereign immunity is to be changed, that alteration, modification, or repeal *must* be by legislative action, not judicial fiat. *See* Austin v. Mayor of Baltimore, 286 Md. 51, 405 A.2d 255 (1979); Bradshaw v. Prince George's County, 284 Md. 294, 396 A.2d 255 (1979); Board of Trustees v. John K. Ruff, Inc., 278 Md. 580, 366 A.2d 360 (1976); Jekofsky v. State Roads Comm'n, 264 Md. 471, 287 A.2d 40 (1972); Herilla v. Mayor of Baltimore, 37 Md. App. 481, 378 A.2d 162 (1977); Ramsey v. Prince George's Co., 18 Md. App. 385, 308 A.2d 217, *cert. denied,* 269 Md. 765 (1973).

who collided with another vehicle, was "not immune from being sued for damages arising from . . . [the] accident." [2]

The immunity defense, having been pulled from under him like the proverbial rug, the appellant stood almost defenseless before a jury which returned verdicts against the ambulance driver, appellant, John K. Macy, for $20,663.63. Following the entry of judgment absolute on the verdict, Macy appealed. The appeal presents one question *videlicet:*

> Is a volunteer fire department ambulance driver, in the course of his duties for a sovereign, a public officer and, thus, entitled to invoke the defense of governmental immunity?

The matter is before us on an agreed statement of facts. Because of its relative brevity, we quote the entire statement:

> "On the afternoon of Tuesday, June 28, 1977, Appellant, John K. Macy, a volunteer member of the Greensboro Volunteer Fire Company, Inc., had finished washing one of the Fire Company's ambulances and, together with a friend, Jeffrey Riddleberger, who was not a member of the Fire Company, but a prospect for membership, *set out to "blow dry" or "spin dry" the ambulance by driving it a few miles down the road and then back to the fire house.* John Kirk Macy was a 19 year old volunteer member of the Fire Company, a trained emergency medical technician, who had also been elected to the post of ambulance secretary, a position which he held on June 28, 1977. According to the testimony of Macy and the Chief of the Fire Company, *it was a standard operating procedure to drive the ambulances on a short run after they had been washed to allow the rushing air passing over the moving ambulance to blow out any excessive accumulation of water on the flat top of the*

---

2. Judge Rasin limited his ruling to the facts of this particular case, expressing "no opinion as to what . . . [the trial court's] ruling might be with respect to a fireman on his way to or from a fire or an ambulance driver transporting a patient or on his way to pick up a patient or returning after having delivered a patient."

*ambulance and in and around its emergency lighting equipment.* They further testified that this provided an opportunity to inspect the emergency lighting and audio systems of the ambulance to ensure that water had not caused any short in these electrical systems. *The parties stipulated that Macy was acting as the agent, servant and employee of the Fire Company at the time of the accident, and within the scope of his 'employment.'*

While Macy was operating the ambulance in a westerly direction on Maryland Route 480 between Greensboro and Ridgely in Caroline County, an accident occurred when he attempted to make a left turn into a parking lot adjacent to the highway, to turn around and return to the fire house, and collided with a tractor-trailer truck driven by Leroy Francis Hayman, and owned by Norris Wilson Hayman. Both vehicles suffered extensive damage, as did a vehicle parked near the point of impact which was owned by Frank Heverin." (Emphasis supplied.)

Governmental immunity, in this State, precludes recovery in tort from *public officials* for nonmalicious acts performed in the course of their discretionary capacity, *Duncan v. Koustenis,* 260 Md. 98, 104, 271 A.2d 547, 550 (1970), although they *may* be liable for the negligent performance of purely ministerial acts. *Clark v. Ferling,* 220 Md. 109, 114, 151 A.2d 137, 139 (1959). *Public employees,* however, are not protected by the shield of the sovereign. *Duncan v. Koustenis,* 260 Md. at 104, 271 A.2d at 550. Having determined that immunity applies to *public officials,* at least in most instances, but not to *public employees,* we are confronted with the question of whether a fireman, volunteer or otherwise, is a *public official.* If he is, then obviously, he, in the performance of his duties, is cloaked with immunity to the extent allowed by law. On the other hand, if he or she is a *public employee,* he or she is answerable personally for his or her negligent wrongdoing.

A *public official,* it may be said, is a person who, upon being issued a commission, taking the required official oath, enters

upon, for a fixed tenure, a position called an office where he or she exercises, in his or her own right, some of the attributes of the sovereign he or she serves, for the benefit of the public.[3] *Duncan v. Koustenis,* 260 Md. at 105, 271 A.2d at 550; *Gary v. Board of Trustees,* 223 Md. 446, 165 A.2d 475 (1960).

A person need not satisfy each part of the general definition in order to be considered a public official. The circumstances of each and every case must be separately sorted and weighed, so that, a party who does not have a fixed tenure may, nevertheless, be a public official if he or she meets the other aspects of the public official. For example, a police officer has been held to be a public official even though the officer does not generally serve for a fixed term, nor do all employees of State agencies or departments of political subdivisions receive a "commission." The police officer does, however, take an oath, exercise on a daily, if not minute-to-minute basis, some of the powers of the State and subdivision, and exercises those powers for the benefit of the public. These duties, the Court has held, are sufficient to qualify the police officer as a public official, so long as the officer acts "within the scope of his law enforcement function." *Karangelen v. Snyder,* 40 Md. App. 393, 395, 391 A.2d 474, 475 (1978). *See also Robinson v. Board of County Commissioners,* 262 Md. 342, 278 A.2d 71 (1971); *Wilkerson v. Baltimore County,* 218 Md. 271, 146 A.2d 28 (1958); *Harris v. Mayor of Baltimore,* 151 Md. 11, 133 A. 888 (1926).

The following are *not* public officials: a public school teacher, *Duncan v. Koustenis, supra;* Chief of Right-of-Way Department of the State Roads Commission, *Howard County Metropolitan Commission v. Westphal,* 232 Md. 334, 193 A.2d 56 (1963); Deputy State Auditor, *Gary v. Board of Trustees, supra;* Special Assistant Attorney General, *Hammond v. Lancaster,* 194 Md. 462, 71 A.2d 474 (1950); General Counsel

---

3. Sometimes a bond is required as a condition prerequisite to the entrance into the office, the bond inuring to the benefit of the people. Earlier opinions have utilized the "bond" as a requirement for a *public official.* There are, however, far too many such offices that require no bond and far too many *public employees* who are required to be bonded for the bond requirement to be considered a valid test.

of State Tax Commission, *State Tax Commission v. Harrington,* 126 Md. 157, 94 A. 537 (1915); Members of Racing Commission, *Clark v. Harford Agricultural and Breeders' Association,* 118 Md. 608, 85 A. 503 (1912); Superintendent of Public Instruction, *Mayor of Baltimore v. Lyman,* 92 Md. 591, 48 A. 145 (1901).

The appellant, in the case before us, seeks to liken himself to a police officer, a public official, and thus immune from suit for nonmalicious torts. *Karangelen v. Snyder,* 40 Md. App. at 395, 391 A.2d at 475. Aware of the fact that Maryland does not seem to have passed upon this particular issue, Macy urges us to adopt the view that "firemen,[4] both paid and volunteer, . . . are 'public officers,' like policemen." He asserts that there is "no logical reason why he, as a volunteer fireman with an agency or instrumentality of the government of Caroline County, should not be accorded the same status [as a policeman]." "Policemen," he reasons, "are charged with protection of life and property, keeping of peace and order, and enforcement of the laws of the State. Firemen are charged with the important public duties and responsibilities of fire extinguishment and prevention, and the protection of life and property. Like policemen, firemen may exercise a large portion of the sovereign power of government." To bolster his position, Macy cites us to five cases decided in three different States, ranging from coast to coast. *See Mercadante v. City of Paterson,* 111 N.J. Super. 35, 266 A.2d 611 (1970), *aff'd* 58 N.J. 112, 275 A.2d 440 (1971), *Guth v. Township of North Bergen,* 35 N.J. Super. 24, 113 A.2d 50 (1955), *Johnston v. City of Grants Pass,* 120 Ore. 364, 251 P. 713 (1926), *rehearing denied,* 120 Ore. 364, 252 P. 1118 (1927), *Benefiel v. Eagle Brass Foundry,* 154 Wash. 330, 282 P. 213 (1929), and *Beck v. Carter,* 2 Wash. App. 974, 471 P.2d 127 (1970), all of which flatly hold that a fireman is a public official. We think them inapposite, however, for the reason that each of them is concerned with a municipally paid fire department, a situation far different than that of Macy, a volunteer ambulance driver in a volunteer fire company.

---

4. The use of the term "firemen" in the American language became popular in the 1830's, according to S. B. Flexner, *I Hear America Talking.* 399 (1976).

When a fireman is a paid employee, the municipality has the opportunity to select those persons it desires to employ, and exercises, subject to whatever civil service regulations there may be, the authority to terminate the employment. In addition, the municipality is able to regulate the hours that firemen work. No such control is present in the case of a volunteer. The municipality may not even know that the volunteer exists much less is performing services in the fire company, and it cannot compel the volunteer to act.

Volunteer firemen are of necessity highly motivated in the performance of acts tending to alleviate the physical pain and suffering of their fellow man, as well as to protect his property from ravage and destruction by fire. Notwithstanding their lofty motivation, they remain volunteers and are not subject to direction or control of the sovereign. They are not public officers or public employees.

Volunteer firemen are not the only persons who donate their time and services. There are many kinds of gratuitous services that may be rendered to a municipality by its citizens. Volunteers often come forth to assist in parades, craft shows, exhibitions, ethnic festivals, concerts, conventions, entertainment of foreign visitors, and the like. All of them contribute toward the betterment of the municipality and, thus, help to make it a better place in which to reside. The giving by the citizens of their time and effort does not, however, make them public officers or public employees. *Shindledecker v. Borough of New Bethlehem,* 145 Pa. Super. 77, 20 A.2d 867 (1941); *Steffy v. City of Reading,* 353 Pa. 539, 46 A.2d 182 (1946).

Volunteer fire companies and ambulance drivers are not supervised and controlled by a municipality, but rather by their own elected officers. The municipality has no voice in deciding who will or will not be accepted as a volunteer, nor are they consulted as to the particular duties to which the volunteer is assigned. For us to hold that a municipality automatically assumes responsibility for the negligent acts of those rendering gratuitous services to the municipality would either subject the municipality to continual, if not continuous, litigation or deter the municipality's acceptance of any gratuitous services from its citizens.

As we see it, the Legislature was aware of the possibility of negligent acts being performed or committed by volunteer firemen and ambulance drivers. To encourage volunteers to perform such services, but at the same time protect others from the volunteer's negligence, the General Assembly exempted the volunteer from liability under specified circumstances. Md. Ann. Code art. 43, § 132(b).[5] We believe the carefully delineated qualifications, that must be present before the application of immunity, are a backhanded, but clear expression by the Legislature that such immunity is not, in other circumstances, applicable.

We decline to be the instrument that extends, under the circumstances of this case, the harsh doctrine of sovereign immunity to volunteer ambulance drivers. Accordingly, we hold that Judge Rasin did not err in rejecting Macy's motion for summary judgment.

*Judgment affirmed.*
*Costs to be paid by appellant.*

*Lowe, J., concurring:*

There is little about governmental immunity that is fair or just, but to immunize a volunteer fire company (as was done below and not appealed), but hold its volunteers liable as individuals, is so unjust that my sense of fair play compels

---

5. That section provides:

"(b) A member of any State, county, municipal or volunteer fire department, ambulance and rescue squad, ... or law enforcement agency who has completed an American Red Cross course in advanced first aid or its equivalent and possesses a current card indicating that status as determined by the Secretary of Health and Mental Hygiene, or is certified by the State of Maryland as an emergency medical technician or cardiac rescue technician has the same immunity provided in subsection (a). A volunteer fire department or ambulance and rescue squad has the same immunity as its members."

Subsection (a) provides immunity from personal liability provided the claim against them arises from "medical aid, care, or assistance" rendered "(1) at the scene of an emergency; (2) in transit to medical facilities; or (3) through communications with personnel rendering medical assistance," and the injury complained of is not the result of any "act or omission ... amounting to gross negligence."

a comment. I concur with the majority because it is the law, but my reaction to such law brings me in sympathy with Mr. Bumble's reflections in Charles Dickens' *Oliver Twist.*

I am also offended by the fact that here once again is an insurance company insuring an immune agency and I adopt here my reflections concurring in *Jackson v. Housing Opportunities Commission of Montgomery County,* 44 Md. App. 304 (1979), in that regard.

But in the result here, as there, concur I must.