**Decided June 1, 1989**

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

COMMONWEALTH OF THE NORTHERN )     DCA NO. 88-9017
MARIANA ISLANDS, )     CTC NO. 88-0020
                     )
     Plaintiff-Appellee )
                     )
         v. )         OPINION
                     )
ALFRED ALDAN PANGELINAN, )
                     )
     Defendant-Appellant. )
_____ )

Attorneys for Appellant:      F. Randall Cunliffe, Esq.
                                 CUNLIFFE & COOK
                                 A professional Corporation
                                 Suite 200
                                 210 Archbishop F. Flores Street
                                 Agana, Guam 96910
                                 Telephone: (671) 472-8243

Attorney for Appellee:        ALEXANDRO C. CASTRO
                                 CNMI Attorney General
                                 MIMI S. BUESCHER
                                 Assistant Attorney General
                                 2nd Flr. Administration Bldg.
                                 Saipan, MP 96950
                                 Telephone: (670) 234-7111

BEFORE: MUNSON, and HILL,* District Judges, and HEFNER,** Judge

---

\*     The Honorable Irving Hill, Senior Judge, United States
District Court for the Central District of California, sitting
by designation.

\*\*     The Honorable Robert A. Hefner, Chief Judge, Commonwealth
Trial Court, sitting by designation.

MUNSON, District Judge:

Defendant/appellant Alfred Aldan Pangelinan appeals his conviction by a Commonwealth Trial Court jury of Theft and his conviction by the trial court judge of Theft, Misconduct in Public Office, and Removal of Government Property. For the following reasons, we now affirm in part, reverse in part, vacate in part, and remand for sentencing.

In 1987, Pangelinan was a police sergeant with the Commonwealth Department of Public Safety. Pangelinan was in charge of maintaining evidence acquired by the police department. In February 1987, $26,636 that had been confiscated in a murder investigation was transferred to his custody; in August 1987, Pangelinan received $520 seized during a bribery investigation and a handgun for use as evidence in another case. All of these items were given to Pangelinan to be secured in the evidence room.

Police Department employees made several attempts to obtain from Pangelinan the evidence from the various investigations but were unable to do so. Pangelinan offered several excuses as to why the evidence could not be turned over.

On November 9, 1987, Pangelinan was found on a beach in Saipan suffering from two gunshot wounds. His keys were found in the ocean nearby. Police department officials later inspected the evidence room and the evidence safe and discovered that the $26,636, the $520, and the handgun were missing. Pangelinan was charged by information with:

> Count I    -    Theft of property with a value of $20,000 or more (6 CMC §1601(a) and (b)(1));

**841**

Count II    -  Theft of property with a value of more
               than $250 but less than $20,000 (6 CMC
               §1601(a) and (b)(2));

Count III   -  Theft of property with a value of less
               than $250 (6CMC §1601(a) and (b)(3));

Count IV    -  Misconduct in Public Office (6 CMC
               §3202); and

Count V     -  Removal of Government Property (6 CMC
               §3401)

Pangelinan's trial took place in the Commonwealth Trial Court. A six person jury was impanelled. The jurors were instructed to hear and consider only the evidence relating to Counts I and II. The trial judge was the trier of fact on the remaining three Counts.

The jury returned a guilty verdict on Count I acquitted Pangelinan on Count II. The trial judge found Pangelinan guilty on Counts III, IV, and V. This appeal followed.

Pangelinan presented four issues for this panel to consider:

1.  Whether the thefts charged in Counts I, II,
    and III involved one scheme or course of
    conduct and should have been consolidated
    into one charge.

2.  Whether simultaneous trials before a judge
    and a jury violate the double jeopardy
    clause.

3.  Whether 7 CMC section 3101(a) requires that
    Pangelinan receive a jury trial on all five
    counts.

4.  Whether Pangelinan is a Public Official
    under 6 CMC section 3202.

1. Whether the thefts charged in Counts I, II, and III involved one scheme or course of conduct and should have been consolidated into one charge.

Pangelinan was the sole person in charge of securing evidence for DPS. He possessed the only key to the evidence room where the gun and the $520 were stored as well as the only key to the evidence safe where the $26,636 was kept. The $26,636 was put in Pangelinan's custody in February, 1987. Pangelinan received the $520 and the handgun in August, 1987. Police discovered in November, 1987, that the items were missing.

Pangelinan was charged with three separate counts of theft. Pangelinan moved prior to trial and again during trial to have the government consolidate the three theft charges, which he argued involved one scheme or course of conduct.

The government did not produce any evidence of when the items were taken. At the close of the government's case Pangelinan moved once again to consolidate the charges into one count. He argued that there was no evidence that the items were taken at different times and since the removal of the items involved one course of conduct the charges should be consolidated into one count. Tr. p.271 Lines 1-10. The government responded:

> [W]e're under no requirement to prove different times that these things happened. As a matter of fact, we couldn't, because we don't have the time when this evidence was, when the articles were stolen, but we're under no obligation to establish different times. Tr. p.271, lines 17-22 (emphasis added).

**843**

Decisions of whether and how to charge an accused are exclusively within the domain of the prosecutor. United States v. Miller, 722 F.2d 562, 565 (9th Cir. 1983). But, generally, states are prohibited from punishing a defendant twice for a single offense. North Carolina v. Pearce, 395 U.S. 717 (1969).

This principle was enunciated by the Alaska Supreme Court in N lson v. State, 628 P.2d 884 (Ala. 1981). The Court there outlined what is known as the "single larceny rule." Id. at 897. Under this principle, taking several items of property at the same time and the same place constitutes one larceny. The Alaska Supreme Court relied on the spirit of the double jeopardy clause when it held that a state prosecutor could not separate items in a crime to multiply the offense and increase the punishment. Id.; acord, People v. Lyons, 324 P.2d 556 (Cal. 1958) (Evidence that defendant received a stolen watch and a fur coat at the same time even though the goods were stolen from separate people necessitated a single count of receiving stolen property).

The principle set forth in these cases makes good sense. If prosecutors were permitted to separate elements of an offense in order to charge separate offenses, their imaginations would be the only limit to the combination of charges filed against the accused. See, e.g., United States v. Carter, 795 F.2d 1460 (9th Cir. 1986) (124 separate shipments of counterfeit tapes to two cities divided into 5 counts based on $5000 jurisdictional prerequisite). Fairness, as embodied in the double jeopardy clause, requires that a criminal defendant face only once a charge of theft for stealing

**844**

several items at one time.

The prosecution had the option of charging Pangelinan with three separate thefts. <u>United States v. Miller</u>, 722 F.2d at 565. However, in doing so, it was incumbent upon the government to prove that the items were taken at three separate times. <u>Nelson v. State</u>, 628 P.2d at 897. Absent legislative intent to the contrary, the Court resolves any doubts of whether to turn a single transaction into multiple offenses in favor of the defendant. <u>United States v. Villano</u>, 529 F.2d 1046, 1061 (10th Cir.) <u>cert. denied</u> 426 U.S. 953 (1976); <u>United States v. Lindsay</u>, 552 F.2d 263 (8th Cir. 1977). No such legislative intent is found in the subject statutes and, therefore, Count III must be merged into Count I. For this reason, the judgment on Count III is reversed and the case is remanded to allow the trial judge to resentence Pangelinan.

Another double jeopardy issue raised by this appeal concerns Count V, which charges Pangelinan with removal of government property in violation of 6 CMC section 3401, and Count I, which charges Pangelinan with theft of government property in violation of 6 CMC section 1601(a) and (b)(1). The jury charge on Count I stated that between February 2, 1987, and November 9, 1987, the exact date being uncertain, Pangelinan did unlawfully use, take, or consume the property of the Commonwealth with the intent to permanently deprive it of its rights to the property which is valued in excess of $20,000.

There was no jury charge on Count V because that charge

was decided by the judge. The statute makes it a crime for Pangelinan to have in his possession or to remove from its location without authorization property of the Commonwealth government. 6 CMC §3401.

Generally, the double jeopardy clause prohibits multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). The exceptions to this general rule are limited to two. First, where the legislature has specifically provided for separate convictions and dual sentences for the same act. Ebeling v. Morgan, 237 U.S. 625, 629 (1915); accord, United States v. Lewis, 626 F.2d 940 (D.C. Cir. 1980). And, second, where proof of the second offense requires proof of an additional element not contained in the first. Blockburger v. United States, 284 U.S. 299, 304 (1932).

There is no legislative record to indicate that the Commonwealth Legislature intended to provide that the removal of government property be charged as a separate offense in addition to theft of government property. In the absence of compelling language to the contrary, the first inquiry must be decided in favor of Pangelinan.

Moving to the Blockburger test, the Court must first determine if proof of removal of government property requires proof of an additional element not contained in the theft charge. Comparing the jury instructions regarding Count I[1] with the

---

[1] Based on the Court's prior holding in this section, the theft charges are subsumed into and considered herein as a single theft count.

846

statutory language of the offense charged in Count V it is evident that there is no distinction between the two offenses. By proving Pangelinan stole the evidence, the government at the same time proved that he had removed the items which belonged to the government. Thus, the crime of removal of government property is encompassed in the crime of theft when as here the theft involved government property.

Separate convictions and separate punishments under two different statutes for a single act run counter to the double jeopardy clause. The conviction in Count V is reversed and the trial court is instructed to consider this fact when it resentences Pangelinan.

2.  Whether simultaneous trials before a judge and a jury violate the double jeopardy clause.

Pangelinan argues that trying him before a judge on Count III and, simultaneously, by a jury on Counts I and II violates the double jeopardy clause of the Fifth Amendment of the United States Constitution and a similar clause contained in Article I, section 4(e) of the Commonwealth Constitution. Our earlier ruling regarding Count III being subsumed into Count I renders this issue moot.

3.  Whether 7 CMC section 3101(a) requires that Pangelinan receive a jury trial on all five Counts of the information.

At issue here is the proper implementation of 7 CMC

**847**

section 3101(a), which in pertinent part states:

> Any person accused by information of committing a felony punishable by more than five years imprisonment or by more than $2,000 fine, or both, shall be entitled to a trial by jury of six persons.

The limitation of jury trials in the Commonwealth for only the most serious offenses is a consequence of the Covenant.[2] Historically, the practice stems from the unique socio-political composition of the island cultures. The right to a jury trial in only the most serious offenses existed under the prior Trust Territory Government. Title 5 TTC Section 501. It was negotiated by the principals to the Covenant and was later enacted in 7 CMC section 3101(a). In 1984, the Ninth Circuit held that a criminal defendant in the Commonwealth is not entitled to a jury trial for an offense in which the maximum possible sentence is less than five years imprisonment and/or a fine of less than $2000. CNMI v. Atalig, 723 F.2d 682 (9th Cir.), cert. denied 467 U.S. 1244 (1984). However, in Atalig the defendant was faced with only one charge in the information. Here, Pangelinan faces several.

Pangelinan argues that the statute is clear that a jury trial must be provided on all Counts in an information when any one of them permits a jury trial. He notes that in many cases the jury considers the lesser included offense even though the maximum period of incarceration for the lesser included offense is less

---

[2] Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America, P.L. 94-241.

848

than five years.

The government argues that the only interpretation that the statute supports is that Pangelinan is entitled to a jury trial for only those offenses in which he was exposed to more than five years in jail and/or a $2,000 fine.

Pangelinan maintains that there are several additional reasons for requiring one trier of fact:

1. The same charges were sent to different triers of fact;

2. Both triers of fact listened to the evidence of the entire transaction;

3. The jury was instructed to consider all of the evidence;

4. The jury was not instructed not to consider certain evidence or limit deliberations to certain parts of the transaction.

5. The jury returned a verdict based on all the evidence.

Pangelinan's argument regarding these issues has been diluted somewhat in light of the Court's rulings on Counts III and V. The main thrust of Pangelinan's argument is that the evidence to prove Counts III, IV, and V was introduced in the presence of the jury despite the fact that the jury did not decide these counts. Pangelinan maintains that he was prejudiced by the introduction of this evidence. We find no merit in his argument.

Had all three theft charges been presented to the jury, as Pangelinan requested in the trial court and on appeal, the evidence that was admitted to prove Count III, the theft of the handgun, would have been before the jury. We note in passing that

**849**

there was ample evidence to support the trial judge's verdict on on this Count. Count IV was premised almost entirely on legal argument. There was testimony that Pangelinan was a police officer and legal argument, outside the presence of the jury, that a police officer is a public official. This testimony was not prejudicial and even if it was it was clearly admissible. The evidence to prove Count V was the same evidence introduced to prove Count I which is why we reversed the conviction on Count V. In short, because of our disposition as to Counts III and V and the fact that Count IV was premised on legal argument presented outside of the presence of the jury we are not faced with the weightier issue of whether the trial court's simultaneous jury/bench trial system is offensive to traditional notions of a fair trial. We leave this question to another case and another day.

4. Whether Pangelinan is a Public Official under 6 CMC section 3202.

Pangelinan was charged in Count IV of the information with misconduct in Public Office in violation of Title 6 CMC section 3202. This section makes it a crime for a "public official" to willfully neglect to perform the duties of his office. Title 6 CMC §3202. Pangelinan argues that police officers are not public officials. He maintains that section 3202 should apply only to those persons elected to office or appointed to their position. He also argues that since section 3202 is a penal statute it should be strictly construed, citing Donnelly v. United States, 276 U.S.

850

505, 512 (1928).

The government contends that Pangelinan is a public official as that term is used in section 3202 based, in part, on the fact that he took an oath of office to uphold the constitutions and laws of the Commonwealth and the United States. The government concedes that section 3202 is a penal statute but argues that the Court's construction of the statute should not be unduly technical or narrow, citing Fasulo v. United States, 272 U.S. 620, 628 (1926).

The term "public official" is not defined in the Commonwealth Code. The trial court interpreted "public official" to include police sergeants. The Court reviews the trial court's interpretations of local law under a de novo standard based on People of Guam v. Yang, 850 F.2d 507, 509 (9th Cir. 1988) (en banc).

The Court is inclined to adopt the finding of the trial court and hold that a police officer is a public official under 6 CMC section 3202. Though to some, the position of police officer is a job like any other, most would agree that it is a special type of employment. A police officer is entrusted with the safety and welfa e of the citizenry. 1 CMC §2504. The Constitution requires that a police officer take an oath to support the laws and constitutions of the the Commonwealth and the United States. C.N.M.I. Const. Art. XVII, § 1. We hold that all these considerations taken together support the finding that a police officer is a public official. See, Macy v. Heverin, 408 A.2d 1067,

**851**

1069 (Md.App. 1979).

For all the above stated reasons, we now;

1. AFFIRM the trial court's holding that 6 CMC sectio 3101(a) does not require that all charges be tried to a jury;

2. AFFIRM the trial court's holding that a polic officer is a public official for purposes of 6 CMC section 3202;

3. REVERSE Pangelinan's convictions on Counts III and and VACATE his sentence on these Counts; and

4. REMAND to the trial court to resentence Pangelinan.

_____
Judge Alex R. Munson

_____
Judge Irving Hill

_____
Judge Robert A. Hefner

852