384

*In the Matter of the Guardianship of* RANDALL S. JOHNSON.

*Robert W. Novaskey* (of *Burgess Fitzer, P.S.*), for appellant.
*Gerald W. Neil*, for respondent.
*G. Perrin Walker* (of *Vandeberg, Johnson & Gandara*), *Guardian ad Litem.*

QUINN-BRINTNALL, A.C.J. — Conservators of the estate of Randall Johnson moved to have the estate funds transferred from Washington to California. The trial court denied the request and Johnson appeals. We hold that the trial court did not abuse its discretion in denying the transfer of funds, and we affirm.

## FACTS

Johnson is a 42-year-old man. He was involved in a 64-car collision in Flagstaff, Arizona in 1989 while he was on his way to Army officer training school. He suffered a severe head injury and developed "encephalophy [sic]," which resulted in "significant cognitive problems and a history of seizures." Clerk's Papers at 62.

At the time of the accident, Johnson was married to Julie Johnson (now Hochstrasser). They had two children, a son who is now 14 years old and a daughter now 12. They divorced in 1994. Johnson moved in with his mother, Carol Giffin, after the divorce and has lived in Giffin's home in southern California ever since. In 1994, Giffin was named guardian for Johnson and Pacific Guardianship Services

(PGS) was made guardian of Johnson's estate.[1] There is concern that Johnson's expenses will increase in the future as his health declines and when his mother can no longer provide for his care.

On February 8, 2001, a California court appointed Giffin conservator of Johnson. Chinello & Mandell (C&M) was appointed conservator of Johnson's estate.[2] On February 15, 2001, C&M petitioned Pierce County Superior Court to transfer the assets in Johnson's estate from Washington to California.[3]

At a hearing on March 9, 2001, a Pierce County Superior Court Commissioner heard arguments about the proposed transfer of assets. The arguments revealed a history of conflict between Giffin and PGS. Giffin has not always supplied PGS with receipts for items purchased with the trust estate funds. On another occasion, PGS paid for a new van for Johnson, but Giffin titled the vehicle in the name of herself or Johnson. PGS argued that the van thus purchased violated guardianship practices.

Johnson spoke at the hearing. His comments indicated that he thought the purpose of the proceedings was to provide him easier access to the trust's assets.

Johnson's guardian ad litem (GAL) provided the trial court with background and concluded that there was no compelling reason either for or against the transfer. The GAL questioned Johnson's ability to understand the purpose of the hearing and reported that the Veteran's Administration opposed the transfer. Finding no basis compelling transfer of the funds, the court denied the motion.

Johnson appeals. The sole issue is whether the trial court abused its discretion in denying the transfer of trust assets from Washington to California.

---

[1] The estate is worth approximately $800,000. It receives funds from social security and the Department of Veterans Affairs because Johnson was injured while on active duty.

[2] California uses the term conservator, not guardian, for adults.

[3] The same attorney represented Giffin and C&M in the conservatorship proceedings in California.

## ANALYSIS

STANDARD OF REVIEW

■■■■ The removal of property of nonresident incapacitated persons statute states,

Whenever it is made to appear that it would be in the best interests of the incapacitated person, the court *may* order the transfer of property in this state to a guardian or limited guardian of the estate of the incapacitated person appointed in another jurisdiction, or to a person or institution having similar authority with respect to the incapacitated person.

RCW 11.92.170 (emphasis added). It appears that this statute has not been interpreted and that this is a case of first impression.

If a statute is plain and unambiguous, its meaning must be primarily derived from the language itself. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001).

Previous decisions have examined the scope of authority in a statute that uses "may." Division Three of this court stated,

According to Webster's Third New International Dictionary (1969), "may", in its ordinary and usual meaning, conveys the idea of choice, option or discretion. The general rule of statutory construction has long been that the word "may" when used in a statute or ordinance is permissive and operates to confer discretion.

*State ex rel. Beck v. Carter*, 2 Wn. App. 974, 977, 471 P.2d 127 (1970). *See also Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 508, 39 P.3d 961 (2002) (court has "array of options" when statute states "the court may"); *State ex rel. Longview Fire Fighters Union, Local 828 v. City of Longview*, 65 Wn.2d 568, 570-71, 399 P.2d 1 (1965) (use of the word "may" without any limiting language grants city discretion to alter prior plans). Because the statutory language here indicates "the court may order," it grants the

court discretion in making fund transfer decisions. Thus, we review this case under an abuse of discretion standard.

TRANSFER OF THE STATE

An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. *Hope v. Larry's Mkts.*, 108 Wn. App. 185, 197, 29 P.3d 1268 (2001). Discretion is abused if it is based on untenable grounds or exercised for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Johnson argues that the commissioner did not consider his best interests in making her decision. And that, in a situation with all things being equal, his expressed wishes should control a decision to transfer. PGS responds that the Veteran's Administration opposed the transfer, PGS had fulfilled its duties, and the GAL reported that, given Johnson's misunderstanding about the purpose of the hearing, his frustration would not change with the transfer of funds because they should be no more freely disbursed in California than Washington.

The trial court heard evidence both supporting and opposing the transfer of the estate funds to California. It heard from Johnson's GAL, who concluded Johnson did not understand the proceedings and that there was no compelling reason to transfer the funds. The Veteran's Administration opposed the transfer. The court also heard from Johnson himself and was able to assess his mistaken belief that the transfer of the estate would enable him to have freer access to its assets. Then, the commissioner denied Johnson's request.

The record indicates that the decision was based on a judgment of conflicting evidence, including Johnson's belief that he would be able to spend more easily, a concern over Giffin's handling of her duties, and, during the conservatorship process in California, that Giffin and C&M were represented by the same attorney. The statute, RCW 11.92.170, does not direct the court to order the transfer, and this court cannot say the trial court abused its discre-

tion by denying Johnson's transfer request in these circumstances.

Regarding Johnson's argument that the court did not accede to his stated wishes, his claim appears to equate his best interests with his expressed wishes. These are not the same. "[T]he court has a duty to act to protect the rights of a litigant who appears to be incompetent." *Tai Vinh Vo v. Le Ngoc Pham*, 81 Wn. App. 781, 785, 916 P.2d 462 (1996). Here, the GAL, for instance, told the court that Johnson appeared to lack legal capacity and that he did not think Johnson understood the purpose of the hearing. That being the case, the court must fully assess all the other factors before making its decision. The record before the court demonstrated that there was no compelling argument indicating that the transfer of funds was in Johnson's best interests, regardless of his stated wishes.[4]

Thus, because the court reached a reasonable decision supported by the record, we affirm the commissioner's ruling.

SEINFELD and BRIDGEWATER, JJ., concur.

---

[4] Johnson's attorney at oral argument argued that one factor supporting the transfer was that the estate would be depleted by the cost involved in bringing Johnson to Washington for any hearings about the estate. But in contrast to the attorney, who represents Johnson individually, the GAL found no compelling reasons for the transfer and reported to the trial court that Johnson did not understand the nature of the action. Given this record, we question Johnson's capacity to make decisions regarding future litigation.