# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JULIE E. SIEMS, | No. 60398-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JESUS A. LUGO, | |
| Appellant. | |

CHE, J. — Julie Siems filed a petition for a domestic violence protection order against her ex-husband, Jesus Lugo. At a hearing on the petition, Lugo moved to dismiss the case, arguing that the trial court lacked jurisdiction due to a private contract giving him full and exclusive control over Siems, which prohibited her from appearing in court. The trial court denied the motion to dismiss and, after a continuance, granted Siems a final domestic violence protection order. Lugo appeals, appearing to argue that the trial court lacked jurisdiction, violated Lugo's due process rights, was biased against Lugo, and improperly considered Siems' evidence in support of her petition for a domestic violence protection order. We disagree and affirm.

## FACTS

Julie Siems and Jesus Lugo divorced in July 2017 and have two children together. In 2022, Siems purchased property and built a home, which she has never shared with Lugo. In Spring 2023, Lugo began sending text messages to Siems stating that he wanted to have more children and to get back together with Siems. Over the next few months, Lugo frequently sent

Siems lengthy text and audio messages with increasing hostility. He contended that their divorce was "null and void" because he "publicly denounced it." Clerk's Papers (CP) at 12.

When Siems refused to get back together with Lugo, he told her she was his enemy and "war it is then." CP at 12. Lugo informed Siems that according to the Bible, she deserved death for leaving him, which she took as a threat. Lugo also messaged,

> Let me shove a pole up you're a**, see how you like it. Because that's what you've done to me . . .
>
> I choose to drive my pole instead and why, because I am man. And why you receive the pole. Because you are woman. What type? Well you'll know how valuable your temple is to yourself, to me and to Him in time. As time tells everything.
>
> . . . .
>
> You should fear me.

CP at 52.

In late July 2023, Lugo served Siems with a notarized 16-page document entitled "Private Administrative Remedy," which purported to be a private agreement between Siems and Lugo. CP at 70. The document claimed to be legally binding resulting from Siems' refusal to reunite with Lugo. According to the document, Siems agreed to waive all rights to any accusation against Lugo and that any charge or action brought against Lugo would incur "full liability" in the amount of $33,000,000. CP at 72. "This means in simple terms that anything you attempt to do against me, you accept to being a charge or an action against yourself." CP at 72.

In the document, Lugo warned Siems, "I am giving you one final opportunity to humble yourself and correct your actions and teach your children proper discipline and respect as you wish to be treated because I do not wish to humiliate you in front of them as you have continuously done to me . . . I will offer you this once." CP at 74. "This should be your warning

2

that you now have highly trespassed me and due to this last action can ruin your future and the children's too if need be to teach them a lesson of respect to their elders and of discipline." CP at 75. The document continued,

> I have the highest claim of authority, and I hereby declare to have such, and that NONE can challenge. I am given that authority by the Almighty King Himself and through the Power of His Word that is above all authority and dominion. And because you have taken from me something of great value and now have given me a blank check on a silver platter.

CP at 78.

The document purported that everything Siems owned including her house, vehicles, estate, trust, medical records, etc. belonged to Lugo and that Lugo was Siems' "lawful custodian." CP at 80. According to the document, Lugo was the sole custodian of the children, Siems had no rights to the children, and the children would never live with or be near Siems again. The document also stated that Siems was in "breach of Trust of our biblical marital covenant. And the covenant you committed to was that everything yours was mine, including your body per the biblical covenants and duties that you agreed to." CP at 80. The document purported that Lugo could use Siems' legal name and commercial person as Lugo sees fit "for any intents and purposes of whatever [Lugo] want[s] to do with it without retribution," and that Lugo is Siems' authorized representative for anything about Siems' person in any and every way. CP at 80.

The document provided, "any response or dispute or silence to the matter OTHER than the remedies granted [(1) return the children, or (2) don't return the children and stay silent or dispute the matter], will be your acceptance and consent to this agreement in its entirety . . ." CP at 83. Lugo signed and notarized the document. Siems did not sign the document.

3

In September 2023, Lugo filed a breach of contract claim against Siems, purporting that she had violated his "Private Administrative Remedy." CP at 189. Lugo also filed a petition for a domestic violence protection order against Siems. In his petition, Lugo claimed that Siems' home was their shared residence, claiming that their divorce case had been dismissed for fraud, alleging that there was no parenting plan in place, and requesting access to her property, vehicles, and financial information. The trial court dismissed Lugo's contract case and petition for a domestic violence protection order and entered an order restricting Lugo from filing abusive litigation.

After discovering Lugo's lawsuits against her, Siems filed a petition for a domestic violence protection order against Lugo. In her petition, Siems stated,

> He has shown he is willing to commit perjury and/or he has completely lost touch with reality. This is extremely frightening to me because he has now escalated his tactics, and I am afraid for my life and safety based on his written and verbal threats. I fear if he does not get what he wants, he will cause physical harm to me and take my daughter out of state.

CP at 10. On November 22, the trial court entered a temporary protection order and set a hearing for November 30. As part of the temporary order, the trial court ordered that Lugo surrender any firearms or other dangerous weapons. A law enforcement officer personally served Lugo on November 27.

At the November 30 hearing, Lugo appeared and moved to dismiss the case for lack of jurisdiction. Lugo argued,

> She's not allowed to be here per private agreement, and the Court does not have higher authority than this private agreement. It states that I am the sole custodian over my children, and power of attorney over her, and she has waived her rights to be able to have any kind of action against me per this private agreement.

4

1 Rep. of Proc. (RP) (Nov. 30, 2023) at 4. The trial court denied Lugo's motion to dismiss, reissued the temporary protection order, and granted a one-month continuance. Lugo also claimed the court had a conflict of interest because Siems allegedly paid the court's filing fee. Finding no basis for Lugo's claim, the trial court further ordered that Lugo's argument and motions must be submitted in writing two weeks prior to the hearing.

At the December 28 hearing, Lugo did not appear. The trial court found that Lugo had reasonable notice and opportunity to participate in the hearing and that Lugo had subjected Siems to domestic violence. The trial court entered a final domestic violence protection order. The trial court also found that Lugo was not in compliance with the weapons surrender order.

On January 5, Lugo filed a motion to vacate contending that the court lacked personal and subject matter jurisdiction, venue was improper, and he had received insufficient process and insufficient service of process. At the hearing on his motion, the trial court polled for the parties, and Lugo informed the court that he was the personal representative of Jesus Lugo. When the trial court indicated it would move forward with the hearing in Lugo's absence, Lugo insisted he was present. The trial court asked again if Lugo was he and Lugo responded, "No, he's a fictional corporation. . . . He can't speak." 2 RP (Jan. 18, 2024) at 22. After repeated questioning by the trial court, Lugo became disruptive and was removed from the courtroom by security. The trial court denied Lugo's motion to vacate.

Lugo appeals the domestic violence protection order.

ANALYSIS

As a self-represented litigant, Lugo is held to the same standard as an attorney and must comply with all procedural rules on appeal. *See In re Estate of Little*, 9 Wn. App. 2d 262, 274

5

n.4, 444 P.3d 23 (2019). In accordance with these rules, an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). "Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." *Cook v. Brateng*, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010). Additionally, "[w]e do not consider conclusory arguments that are unsupported by citation to authority." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014).

"It is not the responsibility of this court to attempt to discern what it is an appellant may have intended to assert that might somehow have merit." *Port Susan Chapel of the Woods v. Port Susan Camping Club*, 50 Wn. App. 176, 188, 746 P.2d 816 (1987). And "'[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *In re Guardianship of Ursich*, 10 Wn. App. 2d 263, 278, 448 P.3d 112 (2019) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)).

Lugo's brief is largely incoherent. Lugo appears to argue that the trial court lacked jurisdiction to issue the domestic violence protection order, violated Lugo's due process rights, was biased against Lugo, and improperly considered Siems' evidence in support of her petition for a domestic violence protection order. To the extent Lugo attempts to make additional arguments, his passing treatment of the issues and lack of reasoned argument is insufficient to merit judicial consideration, and we decline to address them.

I. JURISDICTION

Lugo argues that the trial court lacked jurisdiction to enter the domestic violence protection order. We disagree.

6

RCW 7.105.050 establishes the superior court's jurisdiction over domestic violence protection order proceedings. The superior court obtained personal jurisdiction over Lugo when law enforcement personally served him with the petition for the domestic violence protection order and the hearing notice and temporary protection order. *Gates v. Homesite Ins. Co.*, 28 Wn. App. 2d 271, 279, 537 P.3d 1081 (2023). Lugo does not challenge that he was served.

Lugo instead raises jurisdictional arguments typical of people who subscribe to a "sovereign citizen" philosophy, including his assignments of error 3 through 7, and 10 through 11. Sovereign citizens often argue that they cannot be sued without consent and that courts generally lack jurisdiction over them, among other circular and nonsensical theories. *See* Caesar Kalinowski IV, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 158, 160-63 (2019). Courts repeatedly have held that citizens are subject to the jurisdiction of the courts despite their lack of consent. *See, e.g., United States v. Gougher*, 835 Fed. App'x 231, 233 (9th Cir. 2020). To the extent Lugo argues that his private agreement supersedes the court's jurisdiction over issuing protection orders under RCW 7.105.050, he cites to no authority.

Accordingly, we reject Lugo's jurisdictional arguments.

## II. DUE PROCESS

Lugo also appears to argue that the trial court violated his right to due process before confiscating his property or causing the attempted division of his family. Presumably, Lugo is referring to the weapons surrender order the trial court issued along with the temporary domestic violence protection order. We disagree that the trial court violated Lugo's right to due process.

Chapter 7.105 RCW governs the issuance of civil protection orders, including domestic violence protection orders. "The legislature's primary purpose in enacting chapter 7.105 RCW

was to protect victims of DV, stalking, harassment, and other forms of abusive or threatening behavior." *Cox v. Fulmer*, 31 Wn. App. 2d 485, 490, 555 P.3d 431 (2024) (citing RCW 7.105.900). RCW 7.105.305(1) authorizes a court to issue an immediate temporary domestic violence protection order without prior notice to the respondent pending a full hearing on the merits of the petition. The ability to request a temporary domestic violence protection order without notifying the respondent serves an important safeguard to the safety of the petitioner. The immediacy of the safety threats to the victim justifies any temporary infringement on the rights of the alleged abuser that may adhere in lack of notice. *Spence v. Kaminski*, 103 Wn. App. 325, 334, 12 P.3d 1030 (2000).

Moreover, any temporary due process infringement caused by the temporary order and weapons surrender order was remedied when Lugo was properly served with notice of the temporary orders and notice of the full hearing. When Lugo initially appeared for the hearing, the trial court recognized that service was not completed with sufficient time to prepare a defense and continued the hearing for one month at Lugo's request. Lugo failed to appear at the second hearing despite having sufficient notice of it. Accordingly, Lugo fails to show any violation of his due process rights, and his claim fails.

### III. BIAS OF TRIAL COURT

Lugo also appears to argue that the trial court was biased against him. We disagree.

A trial judge is presumed to have acted without bias or prejudice. *Tatham v. Rogers*, 170 Wn. App. 76, 93, 283 P.3d 583 (2012). "To overcome this presumption, the party raising the challenge 'must provide specific facts establishing bias,'" such as a personal or pecuniary interest on the part of the judge. *Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co.*, 19 Wn. App. 2d

210, 218, 494 P.3d 450 (2021) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004)); *Tatham*, 170 Wn. App. at 96. A party need not prove actual bias, as a mere suspicion of partiality may be sufficient to require recusal. *Tacoma S.*, 19 Wn. App. 2d at 218. However, the asserted facts must be more than mere speculation. *Tatham*, 170 Wn. App. at 96.

Lugo fails to meet this burden. Lugo contends that the trial court improperly placed the burden of proof on him. But the record does not support his contention. Rather, it shows that the trial court weighed the evidence provided by Siems and concluded that it was sufficient to show that Lugo had committed domestic violence. While the transcript reveals that the trial court was understandably frustrated with Lugo's behavior in the courtroom, it does not establish that the trial court was biased or shifted the legal burden.

To the extent that Lugo claims the court acted as a merchant on behalf of Siems, he presents no evidence that the court accepted any filing fee payment or other payment, and even if it did, that acceptance of a filing fee is grounds that the court in this type of action acts as a merchant on behalf of and for Siems. See Br. of Appellant at 23, Ex. C. Because Lugo cannot show more than speculation that the trial court was biased against him, his claim fails.

IV. EVIDENCE SUPPORTING PETITION

Lugo also contends that the trial court improperly considered the "private administrative remedy" document and private messages as evidence. But Lugo failed to preserve this issue for appeal.

Generally, issues and arguments not presented to the trial court will not be considered on appeal. RAP 2.5(a). A party objecting to the admission of evidence must make a timely and specific objection at trial. *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). Washington

9

courts have strictly applied RAP 2.5(a) to claimed evidentiary errors because trial counsel's failure to object to the error robs the court of the opportunity to correct the error. *Id.*

Lugo failed to challenge the admissibility of Siems' evidence below. As such, he failed to preserve the issue for appeal, and we do not consider it.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, J.

Cruser, C.J.