# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| In the Matter of the Guardianship/Conservatorship of: | No. 59659-8-II |
|---|---|
| J.B., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—JB brings this appeal pro se and contends the trial court abused its discretion in granting a limited guardianship and full conservatorship over her person and affairs. JB argues that the guardianship/conservatorship evidentiary hearing was procedurally erroneous because the trial court failed to (1) make a finding by clear and convincing evidence that her presence could be waived, (2) appoint an attorney to represent her, and (3) order a professional evaluation.

The Department of Social and Health Services responds that JB lacks standing to bring this appeal. We hold that JB has standing to bring this appeal of a case to which she is a named party. And the guardianship/conservatorship hearing was procedurally adequate because the trial court (1) found by clear and convincing evidence that JB's presence could be waived, (2) was not required by statute to appoint an attorney, and (3) ordered a professional evaluation. Therefore, we affirm.

FACTS

JB and RB are an elderly couple living in Hoquiam, Washington; both have dementia. They have two adult daughters: Dara Gaddis and Kari Hasbrouck. In 2021, both Gaddis and Hasbrouck

were listed as attorney-in-fact for their parents. Hasbrouck's authority was revoked in 2022, and a new power of attorney was created listing Gaddis as the sole attorney-in-fact. Gaddis' durable power of attorney was later revoked by the trial court in April 2024.

In September 2023, when Gaddis' power of attorney was in effect, Washington Adult Protective Services (APS), a part of the Department of Social and Health Services (DSHS), received an anonymous report alleging Gaddis was neglecting her parents. An APS social worker visited JB and RB's home and noted that it was cluttered with trash, showed signs of water damage, and had a strong mold and urine smell.

In January 2024, the trial court appointed a court visitor to investigate the issues raised in the anonymous report. The court visitor concluded in their report that JB was unable to drive and "relie[d] on her daughter for transportation." Clerk's Papers (CP) at 68. Moreover, the court visitor recommended that JB not appear at the upcoming guardianship/conservatorship hearing because "[s]he is not physically able to attend and would not understand the court process." *Id.* at 72. Additionally, in March, a professional evaluation conducted by a physician confirmed that JB had dementia and required supervision.

In April, the trial court conducted a joint initial hearing on DSHS's petitions for guardianship and conservatorship over JB and RB. Shortly after, the trial court conducted an evidentiary hearing to hear from Gaddis and Hasbrouck. At the beginning of the evidentiary hearing, the trial court acknowledged that JB and RB were not present but clarified that this was because the court visitor recommended that they not appear at the hearing. Those in attendance included the court visitor, APS social worker, Gaddis, Hasbrouck, and counsel for DSHS. Gaddis and Hasbrouck provided testimony. The trial court was dismayed that Gaddis and Hasbrouck could

not put aside their differences to address the "[t]oxic air, mold and mildew" in their parent's house. Verbatim Rep. of Proc. (VRP) at 68. Then, the trial court revoked Gaddis' power of attorney and questioned its validity because the document was drafted and notarized by her son-in-law. The trial court determined that a certified professional guardian and conservator was needed but explained, "[t]hey must consult with the family on any major decisions." *Id.* at 67. Specifically, the trial court concluded that JB and RB "will not be removed from their home and placed in a facility without a full hearing on that being conducted in a courtroom." *Id.*

In its findings of fact and conclusions of law, the trial court appointed Anchor Guardianship Services (Anchor) as a professional limited guardian and full conservator for JB. The trial court explained that

> [JB], by clear and convincing evidence, lacks the ability to meet essential requirements for physical health, safety, or self-care because [she] is unable to receive and evaluate information or make or communicate decisions, even with appropriate supportive services, technological assistance, or supported decision making.
> . . . [and] is incapable of managing property or financial affairs due to a limitation in [her] ability to receive and evaluate information.

CP at 42. One of the limitations placed on JB included the ability "[t]o sue and be sued, other than through a guardian and conservator." *Id.* at 44. JB appeals the trial court's order appointing a guardian and conservator.

## DISCUSSION

JB contends the trial court abused its discretion in granting guardianship/conservatorship because, at the evidentiary hearing, the trial court failed to (1) find by clear and convincing evidence that her presence could be waived, (2) appoint an attorney to represent her, and (3) order a professional evaluation. DSHS contends JB does not have standing to bring this appeal because

the trial court revoked her ability to sue or be sued on her own behalf. We conclude that JB does have standing to bring this appeal on her own behalf because she is a named party. Additionally, we conclude that the trial court did not abuse its discretion by appointing a guardian/conservator.

## I. STANDING

As an initial matter, we must determine whether JB has standing to bring this appeal. DSHS contends JB lacks standing because the trial court terminated her right "[t]o sue and be sued, other than through a guardian and conservator" in its written order appointing a limited guardianship and full conservatorship. *Id.* Therefore, according to DSHS, JB is a third party that can only vindicate her rights if she can show "(1) the litigant has suffered an injury-in-fact, giving [them] a sufficiently concrete interest in the outcome of the disputed issue; (2) the litigant has a close relationship to the third party; and (3) there exists some hindrance to the third party's ability to protect [their] own interests." *In re Guardianship of Cobb*, 172 Wn. App. 393, 401-02, 292 P.3d 772 (2012). But here, JB is not suing or being sued. She is appealing in a case where she was already a named party before the guardianship order was signed. Under the Rules of Appellate Procedure, "an aggrieved party may seek review by the appellate court." RAP 3.1. Accordingly, JB may pursue this appeal of the trial court's order appointing a guardian.

## II. THE GUARDIANSHIP/CONSERVATORSHIP EVIDENTIARY HEARING

We conclude that the guardianship/conservatorship evidentiary hearing was procedurally adequate because the trial court (1) found by clear and convincing evidence that JB's presence could be waived, (2) was not required to appoint an attorney to represent JB, and (3) ordered a professional evaluation. Therefore, we affirm.

STANDARD OF REVIEW

Chapter 11.130 RCW, the uniform guardianship, conservatorship, and other protective arrangements act, does not provide a standard of review for trial court decisions regarding appointment or management of a guardian. *In re Guardianship of F.S.*, 33 Wn. App. 2d 24, 35, 559 P.3d 138 (2024), *review denied*, 4 Wn.3d 1015, 564 P.3d 562 (2025). However, we have adopted an abuse of discretion standard for trial court decisions regarding appointment or management of a guardian for minors because it is a fact-intensive inquiry. *Id*. Determining who should be appointed as an adult's guardian is a similarly fact-intensive inquiry that the trial courts are in a better position to conduct than the appellate court. Therefore, we review the trial court's decision appointing a limited guardianship and full conservatorship over JB for abuse of discretion. Under this standard, we will find error only if the " 'court's decision (1) adopts a view that no reasonable person would take and is thus manifestly unreasonable, (2) rests on facts unsupported in the record and is thus based on untenable grounds, or (3) was reached by applying the wrong legal standard and is thus made for untenable reasons.' " *Id.* at 35 (quoting *In re Guardianship of L.C.*, 28 Wn. App. 2d 766, 772, 538 P.3d 309 (2023)).

1. Absence from the Hearing

First, JB contends the trial court abused its discretion by appointing a guardian in her absence because it did not enter a finding by clear and convincing evidence that she could not attend and participate as required by RCW 11.130.295(2). Based on this alleged deficiency, JB requests that the trial court's order be reversed and remanded. We deny that request.

The trial court may conduct a guardianship hearing without the respondent if it "finds by clear and convincing evidence that . . . [t]here is no practicable way for the respondent to attend

and participate in the hearing even with appropriate supportive services and technological assistance." RCW 11.130.295(2)(b); RCW 11.130.400(2)(b). The trial court is not required to use this explicit language, as long as its findings are " 'sufficiently specific to permit meaningful review.' " *In re Guardianship of L.C.*, 28 Wn. App. 2d 766, 773, 538 P.3d 309, 314 (2023) (quoting *State v. Holland*, 98 Wn.2d 507, 517, 656 P.2d 1056 (1983)). When written findings are insufficient, they may be supplemented by the trial court's oral statements on the record. *Id.* In *In re Detention of LaBelle*, 107 Wn.2d 196, 219, 728 P.2d 138 (1986), for example, although the trial court's written findings were ultimately determined to be inadequate, the trial court's oral remarks demonstrated that it relied on the required statutory criteria.

Here, the trial court entered a written finding that JB, "by clear and convincing evidence, lacks the ability to meet essential requirements for physical health, safety, or self-care because [she] is unable to receive and evaluate information or make or communicate decisions, even with appropriate supportive services, technological assistance, or supported decision making." CP at 42. Even if the written order contained no explicit finding that JB's presence could be waived, it can be supplemented by the trial court's oral statements on the record. At the beginning of the hearing, the trial court acknowledged that JB was not expected to attend the hearing based on the court visitor's report, which recommended that JB not appear because "[s]he is not physically able to attend and would not understand the court process." *Id.* at 72. The trial court's written findings, paired with its oral decision and statements on the record, illustrate that the trial court found, by clear and convincing evidence, that it was not practicable for JB to attend and participate in the hearing. Therefore, the trial court did not abuse its discretion.

2. Appointment of Counsel

Next, JB contends the trial court abused its discretion by not appointing an attorney to represent her at the evidentiary hearing. JB contends the trial court should have appointed an attorney because "it is clear by [her] non-appearance at the hearing that [she was] unable to be adequately protected and represented." Br. of Appellant 8-9. We disagree.

> The relevant part of chapter 11.130 RCW for appointment of an attorney provides that:
>
> The respondent shall have the right to be represented by a willing attorney of their choosing at any stage in guardianship proceedings. . . . Unless the respondent in a proceeding for appointment of a guardian for an adult is represented by an attorney, the court is *not required*, but *may* appoint an attorney to represent the respondent, regardless of the respondent's ability to pay.

RCW 11.130.285(1)(a), (b) (emphasis added); RCW 11.130.385(1)(a), (b) (emphasis added). " 'The general rule of statutory construction has long been that the word 'may' when used in a statute or ordinance is permissive and operates to confer discretion.' " *In re Guardianship of Johnson*, 112 Wn. App. 384, 387, 48 P.3d 1029 (2002) (quoting *State ex rel. Beck v. Carter*, 2 Wn. App. 974, 977, 471 P.2d 127 (1970)). Thus, here, the plain language of the statute leaves it to the discretion of the court to appoint an attorney. "We do not look beyond the plain language of the statute if it is clear." *In re Guardianship of Decker*, 188 Wn. App. 429, 444, 353 P.3d 669 (2015).

Another relevant part of chapter 11.130 RCW provides that "[w]hen, in the opinion of the court, the rights and interests of the respondent cannot otherwise be adequately protected and represented, the court on its own motion must appoint an attorney at any time to represent the respondent." RCW 11.130.285(1)(c)(ii) (emphasis added). Here, the trial court's implicit conclusion that JB's interests were adequately protected without the appointment of counsel was not an abuse of discretion because it is reasonable and supported by the record. This is evidenced

by the court visitor, APS social worker, Gaddis (the attorney-in-fact at the time), and Hasbrouck all attending the evidentiary hearing. In her brief, JB did not identify which of her interests were allegedly not protected or explain how these interests were not protected beyond stating that "it is clear by [her] non-appearance at the hearing that [she was] unable to be adequately protected and represented." Br. of Appellant 8-9. Given that "[t]he abuse of discretion standard is extremely deferential," we conclude that the trial court did not abuse its discretion. *In re Guardianship of Mesler*, 21 Wn. App. 2d 682, 705, 507 P.3d 864 (2022) (quoting *Hoffman v. Kittitas County*, 4 Wn. App. 2d 489, 495, 422 P.3d 466 (2018), *aff'd*, 194 Wn.2d 217, 449 P.3d 277 (2019)).[1]

3. Professional Evaluation

Finally, JB contends the trial court abused its discretion by holding the evidentiary hearing without a professional evaluation. But the record contains a professional evaluation conducted by a licensed physician in March 2024 for JB. Thus, we conclude that the trial court did not abuse its discretion.

CONCLUSION

We conclude that JB does have standing to bring this appeal. Further, we conclude that the trial court did not abuse its discretion, and its guardianship/conservatorship order was not

---

[1] The court visitor sometimes has an obligation to petition the trial court for appointment of counsel. Chapter 11.130 RCW mandates that the court visitor interview the respondent, explain their right to counsel of choice, and determine whether they would like to request appointment of an attorney. RCW 11.130.280(4). "If the respondent objects to the petition or requests appointment of an attorney, the court visitor shall petition the court to have an attorney appointed." RCW 11.130.280(5). Here, the court visitor's report did not indicate that JB objected to the petition or requested an attorney, which means that the court visitor's statutory duty to petition the court to have an attorney appointed was not triggered. And the trial court found that the court visitor's report was complete and complied with statutory requirements. In her brief, JB did not contend that the obligation was triggered. And even if she did, the court visitor's obligation was not triggered under the circumstances.

improperly entered because the trial court (1) found by clear and convincing evidence that JB's presence could be waived, (2) was not required to appoint an attorney to represent JB, and (3) ordered a professional evaluation. Accordingly, we affirm the trial court's guardianship/conservatorship order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

GLASGOW, J.

CHE, J.